RENDERED: JANUARY 8, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1008-WC

MENARD'S                                                                                    APPELLANT

v.                  PETITION FOR REVIEW OF A DECISION
                    OF THE WORKERS' COMPENSATION BOARD
                    ACTION NO. 14-WC-85570

GARY SCOTT; HONORABLE CHRIS
DAVIS; COMMONWEALTH OF
KENTUCKY EX REL. DANIEL J.
CAMERON, ATTORNEY GENERAL;
GREGORY POLKOWSKI, M.D.; DR.
HELOISE WESTBROOK, M.D.; OHIO
COUNTY HOSPITAL; ROBERT
BYRD, M.D.; VANDERBILT
MEDICAL CENTER; AND
KENTUCKY WORKERS'
COMPENSATION BOARD                                                           APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, LAMBERT, AND K. THOMPSON, JUDGES.

COMBS, JUDGE: This is a workers' compensation case involving a post-award medical fee dispute. The Workers' Compensation Board (the Board) affirmed the determination of the Administrative Law Judge (ALJ) that two right-knee surgeries performed by Dr. Polkowski are work-related and compensable. Finding no error after our review, we affirm.

On January 29, 2015, the Appellee, Gary Scott (Scott), filed a Form 101/Application for Resolution of Injury Claim. Scott alleged an April 18, 2014, injury in the course and scope of his employment at Menard's when the ladder upon which he was standing collapsed. Following the injury, Scott underwent bilateral knee arthroscopies on June 30, 2014; a left total knee arthroplasty on April 27, 2015; and a right total knee arthroplasty on July 13, 2015.

His claim was settled with respect to the bilateral knee injuries. Form 110/Agreement as to Compensation is dated February 2, 2018, and it was approved by an order entered on February 19, 2018. (Record on Appeal, Vol. V, pp. 662-65). The case was settled for a lump sum of $85,000.00[1] with future medicals "to remain open for bilateral knees, including the right of employer/payment obligor to challenge proposed treatments, therapies, medications, etc." Form 110 described

---

[1] The opinion of the Board states at page 2 that: "The January 29, 2015, Form 110 settlement agreement indicates the parties reached a $7,500.00 lump sum settlement . . . ." It appears that the Board may have referred mistakenly to a Form 110 in a prior claim, *Gary Scott v. Sodexo*, No. WC-11-00991, a copy of which defense counsel filed in the underlying claim for the April 18, 2014, injury before ALJ. (Record on Appeal, Vol. I, pp. 78-84).

the event that resulted in Scott's injury as "Fall from ladder, injuring knees (other injuries contested)" and described the nature of the injuries/body parts affected as "Right knee, left knee . . . ." Other contested injuries/body parts were submitted to the ALJ for a decision and are not at issue in this appeal.

In 2019, Dr. Polkowski at Vanderbilt Medical Center performed two additional right-knee surgeries on Scott due to infection in the right-knee replacement: (1) February 6, 2019, arthroplasty removal prosthesis and insertion spacer right knee; and (2) April 29, 2019, revision arthroplasty total knee and synovectomy/ bursectomy knee.

Menard's contested the two 2019 surgeries by way of a (Supplemental) Medical Fee Dispute/Form 112, which is the subject of this appeal. By opinion and order rendered on February 25, 2020, the ALJ determined that the knee surgeries were work-related and compensable as follows:

> The Plaintiff's position is that the symptoms which gave rise to the treatment continued in varying degrees, but unabated, since the time of his 2015 right total knee arthroplasty . . . .

> I note, as a procedural matter that while there has been an Opinion and Order on other issues in this claim there has never been an Opinion regarding the work-relatedness of the right knee. There has only been a Form 110, Settlement Agreement. That is not binding on the Medical Payment Obligor [MPO] as to any issues, including causation of the right knee.

Regardless, the record demonstrates that after his fall from the ladder at work, on April 18, 2014, the Plaintiff had extensive conservative medical treatment, culminating in a right total knee arthroplasty [TKA] on July 13, 2015. The MPO paid for that surgery.

. . .

. . . I find that the Plaintiff did have a permanent work-related injury, to the right knee, on April 18, 2014. That injury resulted in the July 13, 2015 TKA. For that injury, the treating surgeon, Dr. Beck, assigned an impairment rating and Dr. Barlow agreed it was work-related.

The MPO's next, and perhaps stronger, argument is that the February 6 and April 29, 2019 surgeries by Dr. Polkowski are not work-related even if the 2015 surgery was. Their argument contains two components. One, the inflammation that occurred to cause the removal and revision surgeries [in 2019] is too remote in time to be related to the 2015 surgery and the Plaintiff's co-morbid medical conditions are the actual cause. Again, this is a fair reading of Drs. Dyer and Freimark.[2]

However, this argument is counter-balanced by several pieces of evidence. The first is Scott's own testimony that the swelling and hotness in his right knee continued unabated from 2015 through the time he saw Dr. Polkowski and was treated by him. While Plaintiffs are not expected to, and really can't, make complex medical diagnoses they can provide relevant testimony. This testimony, which I accept, demonstrates that the symptoms did not arise 3 ½ years after the 2015 surgery but immediately.

Second, the records from Scott's primary care physicians at Ohio County Family Medical demonstrate that on no less than 14 visits between December 1, 2017

---

[2] Dr. Dyer performed an Independent Medical Exam. Dr. Freimark performed a records review.

-4-

and January 16, 2019, Scott complained about his right knee and received treatment for it. This again indicates this was an on-going problem and did not materialize in late 2018 or early 2019.

Third, and most relevant to me, is that the treating surgeon, Dr. Gregory Gerald Polkowski, on January 22, 2019, writes that Scott's right knee "infection and inflammation **reaction due to internal right knee prosthesis**." (Emphasis added) . . . [I]f the Vanderbilt surgeon, with no known or demonstrated bias, makes this diagnosis and causation statement I am persuaded. As such, the infection and inflammation were due to the internal right knee prosthesis.

If the infection and inflammation are due to the prosthesis, which I have already found work-related then it stands to reason that the February 6, 2019 surgery to remove the prosthesis due to the infection is work-related as is the April 29, 2019 revision arthroplasty, of which Scott still needed a new one.

In reliance on the above analysis, the February 6, 2019 and April 29, 2019 surgeries by Dr. Polkowski are work-related. There has been no contest over the treatment's reasonableness and necessity. Therefore, the surgeries are compensable.

(Emphasis original).

Menard's filed a petition for reconsideration, which the ALJ denied by an order entered on March 27, 2020.

Menard's appealed to the Board and argued that the ALJ did not rely on substantial evidence in concluding that the surgeries were compensable. Menard's also contended that the ALJ made a patent error because "he did not

-5-

address any additional treatment which may or may not have been related to the infection and/or surgeries which were issues in this dispute."

On July 17, 2020, the Board entered an opinion affirming in part, vacating in part and remanding, which provides in relevant part:

> In the February 25, 2020, decision the ALJ found Dr. Polkowski's medical records were most convincing to his determination the two contested surgeries are work-related and, therefore, compensable. Throughout Dr. Polkowski's medical records, particularly the medical records detailed herein, he diagnosed an "infection and inflammatory reaction **due to** internal right knee prosthesis." (emphasis added). We take issue with Menards' allegation this is not a statement pertaining to causation. Causation is a factual issue to be determined within the sound discretion of the ALJ as fact-finder. Union Underwear Co. v. Scearce, 896 S.W.2d 7 (Ky. 1995). Further "[i]t is the quality and substance of a physician's testimony, not the use of particular "magic words," that determines whether it rises to the level of reasonable medical probability, i.e., to the level necessary to prove a particular medical fact." Brown-Forman Corp. v. Upchurch, 127 S.W.3d 615, 621 (Ky. 2004). Dr. Polkowski utilized the phrase "due to," thereby transforming this diagnostic statement into one in which the ALJ can properly infer causation. Consequently, Dr. Polkowski's opinions constitute substantial evidence supporting the ALJ's finding of a causal connection between Scott's right knee infection and the prosthesis implanted during the original July 15, 2015, total knee replacement surgery. The ALJ concluded Scott's right knee injury and the July 15, 2015, total knee replacement are work-related, and that determination has not been challenged on appeal. Therefore, when the contested surgeries performed by Dr. Polkowski are necessitated in any part by Scott's work-related right knee injury, *they must be compensable*.

(Emphasis original). The Board concluded that "Dr. Polkowski's medical opinions, Scott's testimony, and the medical records from Ohio County Specialty and Family Care constitute substantial evidence supporting the ALJ's determination the two contested surgeries are work-related and, therefore, compensable."

The Board affirmed the ALJ's finding that the two surgeries were work-related and compensable. The Board vacated that portion of the ALJ's March 27, 2020, order denying the petition for reconsideration filed by Menard's and remanded the case to the ALJ with instruction that he address the following:

> the compensability of "all treatment resulting from or necessitated by the [right knee] infection, surgical interventions, pre and post-operative care, medication and expenses associated therein [and] any other medical treatment related to Scott's right knee infection" as contested in the June 24, 2019, Motion to Amend and enter an amended order and award. Further, in an amended order and award, the ALJ must award future medical benefits for Scott's work-related right knee injury.

Menard's timely filed a petition for review in this Court. Its sole argument on appeal is captioned as follows: "The Board and ALJ's opinions consistent [sic] a gross miscarriage of justice in disregarding Dr. Friemark's Opinions and relying on Dr. Polkowski and the claimant's statements." (Bold-face emphasis omitted). Menard's contends that "there was no substantive evidence

that the 2015 knee replacement/prosthetic caused the infection." In essence,

Menard's reargues its case.

> KRS[3] 342.285 grants an ALJ—as fact-finder—sole discretion to determine the quality, character, and substance of the evidence. An ALJ may draw reasonable inferences from the evidence, reject any testimony, and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. In that regard, an ALJ is vested with broad authority to decide questions involving causation.
>
> Although a party may note evidence that would have supported a different outcome than reached by an ALJ, such proof is an inadequate basis for reversal on appeal. Rather, it must be shown there was no evidence of substantial probative value to support the decision.
>
> The appellate tribunal may not usurp the ALJ's role as fact-finder by superimposing its own appraisals as to weight and credibility or by noting other conclusions or reasonable inferences that otherwise could have been drawn from the evidence. If an ALJ's findings of fact are supported by substantial evidence, a finding contrary to the ALJ's findings cannot be sustained.

*Miller v. Go Hire Employment Development, Inc.*, 473 S.W.3d 621, 629 (Ky. App.

2015) (citations omitted).

We agree with the Board's analysis that substantial evidence supports

the ALJ's determination that the two surgeries are work-related and compensable.

The ALJ thoroughly explained the basis for his decision. The ALJ did ***not*** rely

---

[3] Kentucky Revised Statutes.

-8-

upon the claimant's testimony to establish causation as Menard's suggests in its Brief. Rather, the ALJ accepted Mr. Scott's testimony ***about his condition*** -- that he had ongoing right knee problems following the 2015 TKA. A worker's testimony is competent evidence of his physical condition and abilities. *Ira A. Watson Dep't Store v. Hamilton*, 34 S.W.3d 48, 52 (Ky. 2000). In addition, the ALJ was persuaded by the records from Mr. Scott's primary physicians, Ohio County Medical, which established that Mr. Scott treated for an ***ongoing*** right knee problem. And -- as was his prerogative -- the ALJ believed the causation opinion of Dr. Polkowski, the "Vanderbilt surgeon, with no known or demonstrated bias."

Accordingly, we AFFIRM the opinion of the Workers' Compensation Board entered July 17, 2020.

ALL CONCUR.

BRIEF FOR APPELLANT:                NO BRIEF FOR APPELLEES.

Mark Bush
Ft. Mitchell, Kentucky

Samantha Steelman
Ft. Mitchell, Kentucky